IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, an Illinois municipal corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. **1:20-cv-03380** |
| v. | ) ) ) | |
| ABC AEROLÍNEAS S.A. DE C.V. D/B/A INTERJET, a Mexico corporation, | ) ) ) | Jury Trial Demanded |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff, the City of Chicago ("City"), by its Corporation Counsel, Mark A. Flessner, brings this Complaint for monetary relief against ABC Aerolíneas S.A. de C.V. d/b/a Interjet ("Defendant"), states as follows:

### Parties

1. Plaintiff, the City, is an Illinois municipal corporation and a home rule unit of local government organized under Article VII of the Constitution of the State of Illinois and the laws of the State of Illinois, located in Cook County.

2. Defendant is a corporation organized under the laws of Mexico with its principal place of business at Av. Capitan Carlos León s/n, Zona Federal del AICM, Cuidad de Mexico, Venustiano Carranza, C.P. 15620.

3. At all relevant times, Defendant conducted business in Chicago, Illinois, including by leasing space from the City at Chicago O'Hare International Airport ("O'Hare") and operating flights into and out of O'Hare.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between the City, which is a citizen of the State of Illinois, and Defendant, which is a citizen or subject of Mexico, a foreign state.

5. This Court has personal jurisdiction over Defendant because the acts giving rise to the claims occurred in Cook County, Illinois.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the claims alleged arose, at least in part, in this District, because this Court has personal jurisdiction over Defendant, and because the Defendant and the City (collectively, "Parties") expressly agreed to venue in this Court by written contract. *See* Airline Use and Lease Agreement ("AULA"), attached without exhibits as **Exhibit A**, at § 18.8.2.

## Factual Background

**A. The City enters into a binding contract with Defendant to lease Defendant space at O'Hare and allow Defendant to operate its air transportation business in return for, *inter alia*, Defendant's obligations to make certain payments to the City.**

7. The City, through its Chicago Department of Aviation ("CDA"), owns and operates O'Hare.

8. The Parties entered into a binding contract, the AULA, which, by its terms, is effective from May 12, 2018 through December 31, 2033. *See* Ex. A at §§ 2.1 & 2.3.1.

9. The AULA requires Defendant, in accordance with the 49 U.S.C. § 40117 ("PFC Act"), and 14 CFR Part 158 ("PFC Regulations"), to collect Passenger Facility Charges ("PFCs") on behalf of the City and hold those PFCs in trust for the City:

> Airline shall hold the net principal amount of all PFCs that are collected by Airline or its agents on behalf of the City pursuant the PFC Act and the rules and

> regulations thereunder (14 C.F.R. Part 158, the "PFC Regulations") in trust for the City. For purposes of this Section 16.6, net principal amount shall mean the total principal amount of all PFCs that are collected by Airline or its agents on behalf of the City, reduced by all amounts that Airline is permitted to retain pursuant to Section 158.53(a) of the PFC Regulations.

Ex. A at § 16.6.1.

10. PFCs are fees that the Federal Aviation Administration ("FAA") authorizes CDA to charge O'Hare passengers to fund approved projects.

11. The rate of PFCs are set and regulated by the FAA.

12. PFCs are collected from passengers as one of the fees included in the ticket price issued to them by airlines that operate at O'Hare, including Defendant.

13. The AULA requires Defendant to comply with the PFC Act and PFC Regulations, *see id.* § 16.6.1, which, in turn, require Defendant to transmit PFC collections to CDA (on behalf of the City) on a monthly basis, no later than the last day of the calendar month following their collection:

> Passenger facility charges collected by carriers shall be remitted to the public agency on a monthly basis. PFC revenue recorded in the accounting system of the carrier, as set forth in § 158.49 of this part, shall be remitted to the public agency no later than the last day of the following calendar month (or if that date falls on a weekend or holiday, the first business day thereafter).

14 CFR § 158.51.

14. With the exception of handling fees, Defendant has neither a legal nor equitable interest in the PFCs that it collects on behalf of the City:

> Passenger facility revenues that are held by an air carrier or an agent of the carrier after collection of a passenger facility charge constitute a trust fund that is held by the air carrier or agent for the beneficial interest of the eligible agency imposing the charge. Such carrier or agent holds neither legal nor equitable interest in the passenger facility revenues except for any handling fee or retention of interest collected on unremitted proceeds as may be allowed by the Secretary.

3

49 U.S.C. § 40117(g)(4).

15. In fact, the PFC Act requires that Defendant segregate the PFCs that it collects on behalf of the City in a separate account:

> A covered air carrier shall segregate in a separate account passenger facility revenue equal to the average monthly liability for charges collected under this section by such carrier or any of its agents for the benefit of the eligible agencies entitled to such revenue.

49 U.S.C § 40117(m)(4).

16. In addition to PFCs, the AULA also requires Defendant to pay the City Airport Fees and Charges on a monthly basis:

> Beginning on the Effective Date, Airline shall pay to the City, on a monthly basis without invoice, Airport Fees and Charges calculated by the City in accordance with Article 8 as follows:
>
> > 9.1.1 Not later than the first (1st) day of each month of each Fiscal Year, Airline shall remit to the City the amount of Airline's Fixed Terminal Charges, based on the Terminal Rental Rates then in effect.
> >
> > 9.1.2 Not later than the twentieth (20th) day of each month of each Fiscal Year, Airline shall remit to the City the amount of Airline's Landing Fees and Activity-Based Terminal Charges, together with Airline's Monthly Activity Report described in Section 8.19 on which Airline's payment under this Section 9.1.2 is based; provided, however, that the City reserves the right to use in the future an automated tracking system instead of Airline's Monthly Activity Report to determine the amount of Landing Fees due from Airline; and further provided, that if the City elects to use such an automated tracking system, the City shall consult with the AAAC and implement a reasonable method of reconciling the reports generated by the automated tracking system with Monthly Activity Reports submitted by each Air Carrier and resolving any discrepancies.

Ex. A at § 9.1.

17. The AULA defines Airport Fees and Charges to include "all rents, charges and fees payable by all Air Carriers for such Fiscal Year as determined and adjusted pursuant to Article 8." *Id*. at 4; *see also, id*. at § 8.

4

18. In addition, under the AULA, Defendant is responsible for the City's costs and reasonable attorney's fees in bringing this action:

> Without limiting the generality of any other provision hereof, [Defendant] shall reimburse the City for the cost of any and all reasonable attorney's fees and investigation expenses and any other reasonable costs incurred by the City in the investigation[,] defense and handling of said suits and claims and in enforcing the provisions of this Agreement.

*Id.* at § 13.1.6.

19. In exchange for Defendant abiding by the terms of the AULA, including, *inter alia*, paying Airport Fees and Charges and transmitting PFCs to the City, the City agreed to allow Defendant to conduct its air transportation business at O'Hare:

> Subject to the terms of this Agreement and Airport Rules, including without limitation operating procedures and protocols that may be imposed by the Commissioner from time to time for the safe and secure operation of the Airport, Airline shall have the right to conduct its Air Transportation Business at the Airport and to perform all operations and functions in connection with the conduct and operation of such business at the Airport. Except as provided in this Article 3, nothing in this Agreement shall be construed as authorizing Airline to conduct any business at the Airport separate and apart from the conduct of its Air Transportation Business. Airline shall not use the Premises, and shall not cause or permit its Associated Parties to use the Premises, for any purpose other than as specified in this Agreement.

§ 3.1.

20. In exchange for Defendant abiding by the terms of the AULA, including, *inter alia*, paying Airport Fees and Charges and transmitting PFCs to the City, the City permitted Defendant to use and to lease specified areas of O'Hare:

> On or before the Effective Date, the City will issue to Airline (a) a Premises Notice, attached hereto as Exhibit C, that will designate which areas of the Airport, if any, the City will make available for Airline's use as: (i) Exclusive Use Premises, (ii) Preferential Use Premises and (iii) Joint Use Premises, and (b) a Terminal Complex Space Exhibit that will designate which areas of the Airport the City will make available for Airline's use as Common Use Premises. Airline acknowledges and agrees that the Premises Notice and the Terminal Complex Space Exhibit may be revised by the City and reissued to Airline from time to

> time during the Term in accordance with the terms and conditions of this Agreement and the Terminal Space Use Protocols . . .

*Id.* at § 4.1.1; *see also*, §§ 4.1.2-4.1.6.

**B.   Defendant commits multiple events of default under the AULA by failing to transmit PFCs and failing to pay Airport Fees and Charges and the City issues a notice of default.**

21.   Since July 2019, Defendant has failed to remit any PFCs to the City that it collected on CDA's behalf.

22.   Defendant owes the City at least three hundred sixty thousand two hundred fifty-six and 57/100 dollars ($360,256.57) attributable to unpaid PFCs for the period from June 2019 through December 2019, an amount that has increased and continues to increase each subsequent month that Defendant continues to operate at O'Hare and to collect PFCs on CDA's behalf.

23.   Defendant has failed to pay the City its required Airport Fees and Charges since July 2019.

24.   Based on its activity and use of O'Hare, Defendant owes the City at least one million eight hundred seventy thousand ten dollars ($1,870,010) attributable to unpaid Airport Fees and Charges for the period from July 2019 through January 2020, an amount that increases each month.

25.   Failure to transmit PFCs, failure comply with the PFC Act and PFC Regulations, and failure to pay Airport Fees and Charges each constitute Events of Default under the AULA:

> Each of the following shall be an "Event of Default" under this Agreement . . .
>
> 17.1.8 Airline shall fail to duly and punctually pay any Airport Fees and Charges required to be paid hereunder or shall fail to make payment of any other sum required to be paid to the City pursuant to this Agreement on or prior to the date such payment is due and shall continue to remain unpaid ten (10) business days after written notice has been provided to Airline by the City or, with respect to any amount for which no payment date is provided herein, then ten (10) business days after written notice of the amount of such payment has been given to Airline or an invoice for such payment has been submitted to Airline. . . .

> 17.1.16 Airline shall fail to transmit to the City PFCs on a timely basis in accordance with the PFC Regulations or shall fail to comply with the provisions of Sections 16.5 and 16.6.

*Id.* at §§ 17.1.8 & 17.1.16.

26. Defendant thus committed multiple Events of Default under Section 17.1.16 of the AULA and violated the PFC Act and PFC Regulations by failing to transmit PFCs to the City in a timely manner as required by the PFC Act, PFC Regulations, and Sections 16.5 and 16.6 of the AULA.

27. In addition, Defendant has committed multiple Events of Default under Section 17.1.16 of the AULA by failing to pay Airport Fees and Charges to the City.

28. On February 18, 2020, the City sent Defendant a Notice of Default and Request to Cure ("Default Notice"). *See* **Exhibit B**. In the Default Notice, the City informed Defendant that it had committed multiple Events of Defaults. *See id.*

29. In addition, the Default Notice requested that Defendant immediately cure its defaults, and informed Defendant that its failure to do so within thirty (30) days would subject Defendant to the remedies contained in Section 17.2 of the AULA. *See id.* at 2.

30. To date, despite the City having sent the Default Notice more than 30 days ago, Defendant has failed to cure its defaults and continues to commit defaults under the AULA.

31. The AULA allows the City to recover the damages it incurs as a result of Defendant's breaches of the AULA plus a fifteen percent (15%) administrative fee:

> [T]ake whatever action at law or in equity appears necessary or desirable to collect Airport Fees and Charges and any other amounts payable by Airline hereunder then due and thereafter to become due, and to enforce the performance and observance of any obligation, agreement or covenant of Airline under this Agreement. For the avoidance of doubt, the City may seek an order for specific performance by Airline of any obligation pursuant to this Agreement, perform said obligations itself or take other actions to mitigate losses that may result from

      Airline's failure to perform and, if the City takes such actions, City may charge Airline for the City's costs plus a 15% administrative fee.

Ex. A at § 17.2.1.

## COUNT I
## Breach of Contract

32. The City restates and realleges paragraphs 1 through 31 as if fully stated herein.

33. The AULA is a binding contract that clearly sets forth the rights and obligations of the City and Defendant.

34. The City met all of its obligation under the AULA.

35. Defendant has a duty under the AULA to remit PFCs to the City in accordance with the PFC Act and PFC Regulations.

36. Defendant has a duty under the AULA to comply with the PFC Act and PFC Regulations.

37. Defendant has a duty under the AULA to pay Airport Fees and Charges to the City.

38. Defendant has breached its duty and materially breached the AULA by its past and ongoing failure to remit PFCs to the City.

39. Defendant has breached its duty and materially breached the AULA by its past and ongoing failure to pay Airport Fees and Charges.

40. The City has been and continues to be damaged by Defendant's breaches in the amount of at least two million two hundred thirty thousand two hundred sixty-six and 57/100 dollars ($2,230,266.57), which includes three hundred sixty thousand two hundred fifty-six and 57/100 dollars ($360,256.57) in unpaid PFCs and one million eight hundred seventy thousand ten dollars ($1,870,010) in unpaid Airport Fees and Charges.

41. Defendant's damages continue to increase each passing month.

8

**WHEREFORE**, the City respectfully requests that this Court enter an order:

A. Finding Defendant to be in breach of the AULA;

B. Entering judgment in favor of the City and against Defendants for at least $2,564,806.56, which includes $360,256.57 in unpaid PFCs and $1,870,010 in unpaid Airport Fees and Charges, plus a 15% administrative fee of $334,539.99;

C. Finding that Defendant has no legal or equitable right to PFCs that it collected on behalf of the City;

D. Awarding the City any additional Airport Fees and Charges and PFCs that became due prior to the filing of this complaint or that become due to the City during the course of this litigation;

E. Awarding the City its reasonable attorneys' fees pursuant to the AULA § 13.1.6;

F. Granting such other relief as is just and equitable.

Dated: June 9, 2020.            Respectfully Submitted,

MARK A. FLESSNER
Corporation Counsel, City of Chicago

/s/ Cornel Kauffman_____
Attorney No. 90909
Fiona A. Burke, Chief Asst. Corporation Counsel
Cornel Kauffman, Supervising Asst. Corporation Counsel
Sarah Wilbanks, Asst. Corporation Counsel
Aviation, Environmental, Regulatory, and Contracts Division
City of Chicago Department of Law
30 N. LaSalle St., Suite 1400
Chicago, IL 60602
Phone: (312) 742-0330
Cornel.Kauffman@cityofchicago.org
Fiona.Burke@cityofchicago.org
Sarah.Wilbanks@cityofchicago.org